THOMAS MURRAY, Appellant, v. ED KEENAN, Appellee.

**BROKERS: When Commission Earned.** A broker who contracts to produce a purchaser of a farm at ''$135 an acre,'' earns his commission only when he produces a purchaser who is ready, able, and willing to pay $135 per acre *in cash.*

**BROKERS: ''Procuring Cause'' of Sale.** A broker who produces a prospective purchaser, and, after the failure of negotiations, ceases all effort to effect the closing of a deal, may not be said to be the ''procuring cause'' of a sale some months later, to the former prospective purchaser and *another* person with whom the broker had never had any communication.

*Appeal from Palo Alto District Court.*—JAMES DELAND, Judge.

JUNE 25, 1921.

ACTION to recover commission for finding a purchaser for defendant's farm. Under direction of the court, a verdict was returned for defendant. Plaintiff appeals.—*Affirmed.*

*McCarty & McCarty,* for appellant.

*Davidson & Burt* and *E. A. & W. H. Morling,* for appellee.

ARTHUR, J.—Defendant was the owner of 120 acres of land in Palo Alto County, and was living in Emmetsburg. Plaintiff ran a peanut, popcorn, and soft drink stand in Emmetsburg. The last of July or first of August, 1917, plaintiff and defendant met, and plaintiff asked defendant if he wanted to sell his farm. Defendant said he did. Plaintiff offered to find a purchaser for defendant, and defendant told him he might bring him a purchaser at $135 an acre, and that he would pay him $5.00 an acre for such service. The next day, plaintiff found one Pete Daley, and brought him to the defendant as a purchaser for defendant's land. Defendant stated no terms to plaintiff, except the price of $135 an acre, and plaintiff did not inquire as to terms, further than the price per acre.

1. BROKERS: when commission earned.

It is undisputed that plaintiff brought Pete Daley, and that Keenan and Daley talked about the transaction, aside from plaintiff; and that the last talk plaintiff had with either Keenan or Daley was two or three days after the 3d of August, 1917; and that plaintiff made no effort afterwards to bring the parties together for further negotiations; and Daley, individually, did not buy the land. It does appear, however, that, on the 25th of November, 1917, more than three months later, Daley and Coonan purchased the land on easy terms, a small payment down and another payment on March 1, 1918, with a mortgage back for the balance. Plaintiff admits that he never had any talk with Daley, while this deal was pending, to the effect that Daley would pay all cash, or on what terms he would purchase.

Plaintiff claims that, as a result of having brought Daley

and Keenan together, Keenan did, in fact, sell his farm to Daley, the purchaser procured by plaintiff, at the price of $135 per acre, the plaintiff thereby performing his part of the contract; but that the defendant refused to pay the commission. Plaintiff further alleged that the defendant ratified and confirmed the agreement previously made, that he would pay the $5.00 per acre for finding a purchaser at $135 per acre. Plaintiff further claims that he was the procuring cause of the sale that was made to Daley and Coonan. It clearly appears from the record that there was a failure of the parties to reach an agreement when negotiations were on in the latter part of July or the first days of August, although just why they failed to reach an agreement does not appear. Plaintiff's action is based on his services in bringing to the defendant a purchaser; and he claims that he had established his right to the commission because, in the early transaction in July and August, he had brought the parties together, and, as he claimed, Daley was willing to buy, and Keenan was willing to sell, and Daley was not only willing, but was able and ready, to buy defendant's land. Plaintiff did not claim to know on what terms Keenan was willing to sell or Daley was willing to buy. In the absence of the statement of any terms, it is the position of the defendant that the only questions were whether the plaintiff, in the negotiations that took place in July and August, procured Daley as a purchaser, and whether Daley was ready, willing, and able to buy for cash. We think those were the issues presented in the lower court. If plaintiff was entitled to recover, it was for his services in bringing Daley to Keenan in July and August as a purchaser, if Daley was then and there willing, ready, and able to buy the farm, and not for producing Daley and Coonan as purchasers in the sale that was made on November 25th to Daley and Coonan. Plaintiff never talked with Coonan about the transaction. After the negotiations in July and August came to naught, Daley and Coonan formed a partnership, and as such partnership, on November 25th, purchased the land. It is clear that the plaintiff was not the procuring cause of that sale, and not entitled to recover on that account. *Prusiner v. Holsberg*, 159 Iowa 45.

Plaintiff makes some claim for commission by reason of a completed sale to Daley; but the proof shows a sale to Coonan

and Daley. Plaintiff did not declare, in his petition, for services on a sale to Coonan and Daley, but only to Daley. Murray brought Keenan and Daley together, brought them into communication, but did not bring their minds together in an agreement. No agreement was reached, and the deal fell through. Evidently, the case was brought upon the theory that plaintiff had produced Daley as a purchaser ready, willing, and able to buy for cash, because no terms were specified in plaintiff's employment. If the plaintiff succeeded in making a prima-facie case to show that Daley was ready, willing, and able to pay cash at the time of the negotiations in July and August, then he was entitled to have his case go to the jury on that theory; otherwise, he was not. As we gather it, that was the position assumed by counsel on both sides in the lower court when the motion to direct a verdict was submitted and sustained.

Counsel for plaintiff contends that there was a conflict in the evidence as to whether Daley was the sole purchaser, or whether the sale was made to Daley and Coonan. The record does not bear him out in such contention. It appears without dispute that the land was not purchased by Daley, but was purchased by Coonan and Daley.

The question, then, before us is, Did the court err in holding, as a matter of law, that the plaintiff had not made out a prima-facie case, a showing that he had produced a purchaser for defendant's farm in the person of Daley, who was willing, ready, and able to buy defendant's farm? It is clear that Daley was willing to buy the land; that he desired to make the purchase. Was he able to buy the land? In this case, where no terms are mentioned, it is evident—in fact, it is conceded— that to be able meant "able to buy by paying the purchase price all in cash." As no deal was made as to terms, the burden rested on plaintiff to show that Daley was (1) able to pay all cash; (2) that he expressed a willingness to pay cash; and (3) that he showed himself actually ready to pay cash, by showing that he had the present ability to do so. In his argument, counsel for plaintiff asserts that Daley "offered" to pay cash. The record does not justify such statement. The record does not disclose that Daley ever offered to pay all cash, or any part of the purchase in cash, or ever offered to buy on any kind of

terms. There is no evidence that he had the cash available any-
where. Giving to the testimony all the weight that could be
claimed for it, it merely discloses that probably, had Daley been
willing to "put up collateral" or "put up a land contract," he
might have borrowed the money at the banks, $6,000 at each of
the three banks in Emmetsburg. A retired banker, M. L.
Brown, said he would have loaned him $16,000. There is no evi-
dence that Daley was willing or ready to borrow money for the
purpose of buying the land. Neither Daley nor the agent, Mur-
ray, communicated to the defendant that Daley had the cash
to buy the land, or cash to pay any part of the purchase price,
or that he had resources for borrowing, or that there was any
place where he could borrow the money, or that he had any
notion of borrowing the money if he could. The court could
only conclude that Daley did not have the cash to buy the farm,
and was not willing to raise the cash, if he had that ability. If
it should be conceded that there was evidence to take the case to
the jury on the question of Daley's ability to purchase the land,
there is an utter lack of evidence that Daley was either ready
or willing to purchase the land for cash. There really was no
effort made to prove that Daley had the cash to meet the pay-
ments for the land. There was no offer to prove that Daley was
ready to go out into the market, conceding his ability, and pledge
his credit and his property for money with which to buy the
land.

We think it is clear that the evidence does not show that
plaintiff was the procuring cause of the sale to Coonan and
Daley. Counsel for plaintiff cites the case of *Prusiner v. Hols-
berg,* 159 Iowa 45, in support of his position
that it was through the effort of plaintiff that
the sale was finally made to Coonan and Daley,
and that, therefore, plaintiff is entitled to a commission. In
that case, the defendant was the owner of a stock of goods which
he desired to sell, and requested the plaintiff to find him a pur-
chaser, agreeing to pay a reasonable compensation for the serv-
ice. The plaintiff states that he did, in fact, produce a pur-
chaser to whom the sale was made, and that he was thereby
entitled to his commission. It appears that the prospective pur-
chaser was one John Cohen, and that a subsequent sale was

2. BROKERS: "pro-
curing cause"
of sale.

made to John Cohen and J. H. Cohen, the latter being the brother of the prospective purchaser. It is to be noted, however, in connection with the negotiations between the plaintiff and defendant, that defendant was informed that John Cohen was not able to purchase the stock, but that he expected to secure the assistance of his wealthy brother, Joseph.

It is, therefore, clearly apparent that the inability of the prospective purchaser to buy was clearly made known by the plaintiff to the defendant, and the fact that he would be assisted by his brother was a part of the negotiations in which the broker participated. In discussing this matter, we said:

''Appellant insists, as a proposition of law, that, where the purchaser produced by an agent or broker is not able, ready, and willing to buy the property, and thereafter a partnership is formed between such customer and another person, to which a sale is subsequently made without the intervention of such agent or broker, no right to a commission is thereby created. The proposition as thus stated may be admitted, but the case at bar does not fall within the rule. It is the theory of plaintiff's case, and there is evidence to the effect, that, when the name of John Cohen, as a prospective purchaser, was discussed between the parties, his inability to pay the entire purchase price was practically conceded, and that, upon plaintiff's statement that Cohen's brother was rich, and would doubtless assist him in the matter, defendant told him to go ahead. He did so, and the negotiations so begun resulted in the sale. The authority given plaintiff to go ahead with the effort to sell to Cohen contemplated his personal inability to pay the entire price, and his procurement of assistance from his brother. Defendant himself testifies that, when J. H. Cohen came to him with John, and proposed to join in the purchase, he (J. H. Cohen) said: 'I like to help out a little, my brother.' This is not a case where a purchaser produced by an agent proves unable to buy on the terms proposed, and thereafter, without the intervention of the agent, a sale is made to a partnership or syndicate of which the proposed purchaser is a member, but is rather a case where both principal and agent know in advance the inability of the purchaser to complete the deal without assistance, and the

negotiation is continued with 'the expectation or hope of his procuring the necessary assistance.''

We took the position that, if a sale is subsequently made to the prospective customer and another person, without the intervention of the agent, no right to a commission would be created. That is exactly the situation here. The evidence of W. H. Coonan, who was produced as a witness for the plaintiff, shows that he was never interviewed by the plaintiff as a prospective purchaser, but that, just a few days before the purchase was made, the matter was brought to his attention by Mr. Daley, and then, for the first time, so far as the record discloses, was any offer to purchase made, and that was made from Daley and Coonan direct to the owner. The record shows that Murray had absolutely nothing to do with Coonan as a prospective purchaser. Murray claims, all through his evidence, that Daley was the only man that he solicited to buy the property, and is the only man that he introduced to the owner.

It was not error to direct a verdict for the plaintiff. The order and judgment of the trial court are affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.